**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NESTORA GARCIA, *et al.*,

        Plaintiffs,

                                    Case No. 09-cv-322 BB/WDS

    v.

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, *et al.*,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On June 24, 2010, Plaintiffs filed a Motion for Leave to File an Amended Complaint (Doc. 69). Plaintiffs, the parents of a pretrial detainee who died of heart failure while awaiting trial in jail, have sued Defendant government entities and officers for, *inter alia*, medical negligence and deliberate indifference to their son's medical needs. After the deadline for amending the pleadings had passed, and at the tail end of the discovery period, Plaintiffs allege that they learned for the first time of the role played by Dr. Timothy McMurray. Dr. McMurray allegedly served as the primary care provider to Plaintiffs' son, Daniel Garcia, at the Detention Center before his death. Based on this belated discovery, Plaintiffs now have filed a Motion for Leave to File an Amended Complaint to add Dr. McMurray as a defendant and to add further claims against Defendant Dr. Shannon after the pleading deadline has passed, and after the statute of limitations has run. The Court must determine whether, under Rules 15 and 16 of the Federal Rules of Civil Procedure, the Court should grant leave to amend.

For the reasons explained below, the Court concludes that the Motion to add Dr. McMurray and to add claims against Dr. Shannon satisfies the requirements of Rule 15(c) and therefore relates

back to the Garcias' timely filed original complaint. Further, the Court also finds that Plaintiffs have shown good cause to amend under Rule 16(b) and that the amendment is justified under Rule 15(a). Therefore, Plaintiff's Motion for Leave to File an Amended Complaint is GRANTED.

### Factual and Procedural Background

On May 16, 2006, Mr. Daniel Garcia, a 33-year-old pretrial detainee awaiting trial in the Bernalillo County Metropolitan Detention Center, began suffering from an abnormal buildup of fluid in his feet and ankles. In the two weeks preceding his untimely death, Daniel complained to the jail's doctors repeatedly of pain, abnormal fluid buildup in his extremities, and red, blotchy skin. The attending doctor prescribed a diuretic and sent Daniel back to his cell. By the end of the second week, after the doctor had again sent Daniel back to his cell with more diuretic, Daniel called his mother begging her to help him get to a hospital. The following morning, on May 25, 2006, Daniel died in his cell from heart failure.

On May 23, 2008, Daniel's parents filed suit in state court on his behalf alleging negligence and deliberate indifference to Daniel's medical needs. The Garcias named the Bernalillo County Board of Commissioners, the City of Albuquerque, Dr. William Shannon, other unnamed medical staff as "John Roes," and four county officers (and John Does) that Plaintiffs now wish to dismiss. The statute of limitations ran on Plaintiffs' Tort Claims Act claims around May 25, 2008. *See* N.M. Stat. § 41-4-15 (1978). Plaintiffs obtained the summons required to serve Defendants with process on February 25, 2009. On May 23, 2009, the New Mexico statute of limitations ran on the rest of Plaintiffs' claims. *See* N.M. Stat. Ann. § 37-1-8 (2010) (creating a three year statute of limitations for personal injury claims). After removal, this Court issued a scheduling order and set a deadline of October 14, 2009 for the parties to exchange their pretrial disclosures and a deadline of November

23, 2009 for amending pleadings. However, Defendant Dr. Shannon failed to disclose Dr. Timothy McMurray as a potential witness on his behalf by October 14, 2009, or at all.

Yet, now in his pending motion for summary judgment, Dr. Shannon relies on the fact that Dr. McMurray, rather than Dr. Shannon, served as Daniel's primary physician in requesting relief. Dr. Shannon states that he did not examine or treat Daniel for his heart-related symptoms until after his death. By January of 2010, several months after the pleading deadline but well before Plaintiffs filed their June 24 motion to amend, Plaintiffs' expert received medical reports that contained Timothy McMurray's name, but did not describe his medical duties at the jail. Plaintiffs allege that they did not understand McMurray's high degree of participation in treating Daniel from the reports. They further allege that they did not learn of the relative roles of Dr. Shannon and Dr. McMurray until April 7, 2010, when Dr. Shannon testified at his deposition for the first time that he never saw or tried to treat Daniel until after Daniel had died. On June 8 and June 10, 2010, Defendants filed motions for summary judgment. On June 24, 2010, Plaintiffs filed the Motion for Leave to File an Amended Complaint now before this Court.

## Discussion

Plaintiffs' motion primarily involves two aspects of Rule 15 and Rule 16 of the Federal Rules of Civil Procedure. First, it raises the question of whether Plaintiffs' amended complaint adding Dr. McMurray relates back to the timely filed original complaint and thereby overcomes the statute of limitations. Second, if the statute of limitations creates no bar, the motion raises the question of whether the Court should grant Plaintiffs leave to belatedly amend their complaint under either Rule 15(a) or Rule 16(b). The Court addresses each question in turn.

I.      **Rule 15(c)–Whether Plaintiffs' Amendment Relates Back to the Original Complaint**

There is no federal statute of limitations for actions under 42 U.S.C. § 1983. Accordingly, federal courts borrow the limitations period from the most appropriate state statute. *See Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). For civil rights actions under § 1983, state personal injury statutes govern. *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). The statute of limitations ran on Plaintiffs' Tort Claims Act claims around May 25, 2008. *See* N.M. Stat. § 41-4-15 (1978). On May 23, 2009, the statute of limitations ran on the rest of Plaintiffs' claims. *See* N.M. Stat. § 37-1-8 (1978) (creating a three year statute of limitations for personal injury claims).

Rule 15(c) allows plaintiffs to file amended complaints after the statute of limitations has run on a claim where certain conditions are present. The rule establishes different requirements for adding new claims against an existing party versus adding a new party to the suit. The Court first deals with Plaintiffs' requests to add new claims against Dr. Shannon and then addresses Plaintiffs' request to add Dr. McMurray as a new party.

A.      **Adding Additional Claims Against Dr. Shannon**

Dr. Shannon argues that Plaintiffs "seek to add new allegations against [him]." (Def. Shannon's Resp. In Opp'n to Pls.' Mot. To Am. Compl. 16). Under Rule 15(c), the plaintiff may add claims against an existing defendant after the statute of limitations has run so long as the new claim arises out of the same conduct, transaction, or occurrence set out in the original pleadings. *See* Fed. R. Civ. P. 15(c)(1)(A),(B);  *FDIC v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994) ("[T]he best touchstone for determining when an amended pleading relates back to the original pleading is the language of Rule 15(c): whether the claim asserted in the amended pleading arises 'out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'").

4

Defendants argue that Plaintiffs assert new claims of supervisory liability against Dr. Shannon in the amended complaint. The original complaint made § 1983 claims against Dr. Shannon for his own deliberate indifference and implicitly alleged supervisory liability for the actions of an LPN and unnamed health care providers, as well as claims under the New Mexico Tort Claims Act, the New Mexico Medical Malpractice Act, and New Mexico common law for negligence. (Defs.' Notice of Removal, Ex. A, at 6-9, 11-12). The new complaint contains only those same claims against Dr. Shannon: a § 1983 claim for deliberate indifference in Count II as to his own actions and supervisory liability for both an LPN's actions and Dr. McMurray's actions, as well as claims asserting negligence under the New Mexico Tort Claims Act, the Medical Malpractice Act, or New Mexico common law in Count III. (Pls.' Opp. Mot. For Leave to File an Am. Compl. 11-14).

The new claims against Dr. Shannon alleging supervisory liability arise from the same occurrence, medical treatment preceding Daniel's death, as the claims alleged in the original complaint. The amended complaint, just like the original complaint, only makes claims related to the medical treatment Daniel received before his death while in pretrial detention. The original complaint alleged that Dr. Shannon acted with deliberate indifference and negligence in his own treatment and his supervision of nurses and unnamed health care providers. In the new complaint, Plaintiffs make the same allegations but identify specifically one of the previously unnamed health care providers, Dr. McMurray, and allege that Dr. Shannon acted with deliberate indifference and negligence in his own actions, which implicitly includes his supervision of Dr. McMurray. Both the original and new claims revolve similarly around Dr. Shannon's allegedly improper treatment of Daniel in a personal and supervisory capacity. Therefore, assuming that Plaintiffs supervisory allegations are new, the Court finds relation-back insofar as they arise from Dr. Shannon's treatment of Daniel immediately before Daniel's death.

**B.      Adding Dr. McMurray as a New Party**

Rule 15(c)(1)(C) provides for relation-back to add new defendants so long as four conditions are met. First, the claims against the defendant must arise from the same transaction as the original complaint. Second, the addition must constitute a "change" in the parties. Third, the proposed defendant must have received timely notice of the original filing. Finally, the proposed defendant either must have known or should have known that it would have been a party absent a mistake by the plaintiff.[1] Fed. R. Civ. P. 15(c)(1); *see also* 6A Charles Alan Wright et al., Federal Practice and Procedure § 1498, at 128 (3d ed. 1998). For the reasons explained below, the Court concludes that the motion to add Dr. McMurray satisfies all four prongs of Rule 15(c) such that the motion to add Dr. McMurray relates back to the timely filed original complaint.

**1.      Same Transaction**

As the allegations against the original defendants and Dr. McMurray both arise out of the medical care that Daniel Garcia received at the Detention Center immediately before his sudden

---

[1]*Rule 15(c)(1) of the Federal Rules of Civil Procedure* provides:

(1) When an Amendment Relates Back.

An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by *Rule 4(m)* for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity

death, the parties do not dispute that the claims against Dr. McMurray arise from the same occurrence as the claims in the original complaint.

### 2.      Change in Party

Rule15(c)(1)(C) provides that an amendment relates back when, *inter alia*, the amendment "changes the party . . . against whom a claim is asserted." Fed. R. Civ. P. 15(c)(1)(C). Many courts have liberally construed the term "change" in this provision to include amendments that add parties, in addition to amendments that substitute one defendant for another. *See, e.g.*, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007) (en banc); *see also* Wright et al., *supra*, § 1498.2 at 155. The Tenth Circuit, in *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004), concluded that substitution of a defendant for a "John Doe" constitutes a "change" such that "all requirements of Rule 15(c)(3) must be met in order for [a plaintiff's] amended pleadings to relate back to the date of the original." Consequently, though Plaintiffs propose to add Dr. Timothy McMurray rather than substitute him for another defendant, the Court finds that this addition constitutes a "change" within the meaning of Rule 15(c)(1)(C).

### 3.      Notice

As a third requirement under Rule 15(c)(1)(C), a party urging relation-back must show that the proposed defendant had notice of the suit, not just of the underlying claim. *See* Wright et al., *supra*, § 1498.1, at 146 n.16. However, knowledge of the incidents that gave rise to the suit can establish notice if the court finds that the proposed defendant should have known that it would be a proper defendant. *See id.* at 147.

To assess what evidences proper notice of the litigation, some courts require actual notice, while other courts find constructive notice sufficient. *See id.* at 138-141; *see also Slade v. United*

*States Postal Service,* 875 F.2d 814, 816 (10th Cir. 1989) (imputing notice to the Postmaster General when the plaintiff timely served the Attorney General); *Davis v. Corr. Med. Sys.*, 480 F. Supp. 2d 754, 761 (D. Del. 2007) (stating that "notice can be actual, constructive, implied or imputed").

Whether a finding of constructive notice suffices often turns on whether the proposed defendant would suffer prejudice from joinder. *See* Wright et al., *supra*, § 1498.1, at 147; 151. Methods of implying notice include the "shared attorney" method, *see Davis*, 480 F. Supp. 2d at 761, and the "identity of interest" method. *See* Wright et al., *supra*, § 1499, at 199 n.5 (quoting *Wine v. EMSA Ltd. P'ship*, 167 F.R.D. 34 (E.D. Pa. 1996)) ("For purposes of the rule governing relation back, notice may be imputed to proposed new parties . . . when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced."). Because Dr. Shannon's counsel, Ms. Wells, represented at oral argument that if Dr. McMurray is added, he will not be represented by her or her firm, the Court only considers the "identity of interest" method.

When the named defendant and the proposed defendant have an "identity of interest," the court may impute notice to the proposed defendant. *See Brauer v. Republic Steel Corp.*, 460 F.2d 801, 804 (10th Cir. 1972); Wright, *supra*, § 1499, at 194-97. "Identity of interest" means that the parties are "so closely related in their business operations or other activities" that it is fair to presume that the filing of a lawsuit against one party provided notice of the litigation to the other party. Wright, *supra*, § 1499, at 197-98; 199 n.5; *accord Stewart v. Phila. Hous. Auth.*, 487 F. Supp. 2d 584, 589 (E.D. Pa. 2007); *Wine v. EMSA Ltd. P'ship*, 167 F.R.D. 34, 38 (E.D. Pa. 1996).

Some courts find that where a governmental entity had a duty to indemnify an employee, that governmental entity constitutes the "real party in interest" for relation-back purposes. *See*

8

*Dell'Orfano v. Scully*, 692 F. Supp. 226, 232 (S.D.N.Y. 1988) (quoting *Davis v. Krauss*, 93 F.R.D. 580, 582 (E.D.N.Y. 1982)). In *Jacobsen v. Osborne*, the Fifth Circuit implied notice to add additional New Orleans police officers based on identity of interest where the plaintiff had originally sued the City of New Orleans and one officer entitled to defense and indemnification by the city. 133 F.3d 315, 320 (5th Cir. 1998).

This treatment comports with the purpose of Rule 15(c), "to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added by the amendment." Wright, *supra*, § 1499, at 198-99. Where an entity has a duty to indemnify an employee, that entity bears ultimate responsibility for the employee's conduct and so has strong incentives to investigate the employee's conduct. Further, during the responsible entity's investigation, it is highly likely that the entity would notify the employee of the lawsuit as it attempts to discover the facts. *See* Howard M. Wasserman, *Civil Rights Plaintiffs and John Doe Defendants: A Study in 1983 Procedure*, 25 Cardozo L. Rev. 793, 811-12 (2003) (attorneys and government officials likely spoke with the officer who committed the alleged violation, in order to learn from him what happened and why, who else might have been present, and other information necessary for the government entity to prepare its own defense).

Thus, the Court can fairly presume that where a plaintiff has sued one party entitled to indemnification by an entity and later joins another employee entitled to indemnification by that same entity, the later-joined employee had timely notice of the litigation through its indemnifying employer. Therefore, neither the employee nor the entity should suffer prejudice from a late joinder. *See Jacobsen*, 133 F.3d at 320; *Alaya Serrano v. Gonzalez*, 909 F.2d 8, 12-13 (1st Cir. 1990); Engrav, *supra* at 1573 ("When the intended defendant is on notice of the action and that it is the

intended defendant, it will be able to prepare a defense before the evidence spoils and before it is time for trial. Thus as long as there is notice, the policies behind the statute of limitations are met . . .").

Here, counsel for the City of Albuquerque and Bernalillo County represented that these entities contracted with Correctional Medical Services to provide medical services for the jail. At oral argument, Ms. Wells, the attorney for Dr. Shannon and a regular attorney for Correctional Medical Services, represented that Correctional Medical Services has a duty to defend and indemnify Dr. Shannon and Dr. McMurray. While Correctional Medical Services is not a government entity, its role is analogous to a government entity here insofar as it has agreed to indemnify and defend both Dr. Shannon and Dr. McMurray, just like the government entity in *Jacobsen*. Therefore, once Plaintiffs timely sued Dr. Shannon for Daniel's wrongful death, Correctional Medical Services had incentives to investigate the circumstances surrounding Daniel's death.

Further, Correctional Medical Services had ample time and incentive to investigate Dr. McMurray's actions and notify him of the claims against him. First, as noted above, the original complaint listed "John/Jane Roes 1-12 . . . providing medical services to inmates" and then referred to Dr. Shannon and the Roes jointly as "Medical Staff Defendants." (Defs.' Notice of Removal, Ex. A, at 3). Thus, the Garcias made clear in their complaint that their claims extended beyond Dr. Shannon's conduct to the conduct of the other doctors who treated Daniel as well. Consequently, Correctional Medical Services had incentives to investigate not only Dr. Shannon's actions, but also the actions of all other doctors that took care of Daniel Garcia around the time of his death. Since Dr. McMurray acted as Daniel's primary care provider, Correctional Medical Services should have

discovered Dr. McMurray's role at an early stage in the litigation. Therefore, it is fair to assume that after receiving notice, Correctional Medical Services quickly discovered Dr. McMurray's role, as Daniel's primary doctor before his death, and investigated Dr. McMurray's actions.

Thus, under the "identity of interest" doctrine, the only remaining issue is whether Dr. Shannon received timely notice of the suit such that the Court should impute timely notice to Dr. McMurray through him. Before 1991, Rule 15(c) provided that a proposed defendant must have received notice "within the period provided by law for commencing the action." *See* Wright et al., *supra*, § 1498.1, at 129. The Supreme Court in *Schiavone v. Fortune* interpreted this phrase narrowly to mean that the defendants must have received notice within the statute of limitations period, rather than the statute of limitations period plus the time provided for service of process. *See* 477 U.S. 21, 31 (1986); *see also* Rebecca S. Engrav, *Relation Back of Amendments Naming Previously Unnamed Defendants Under Federal Rule of Civil Procedure 15(c)*, 89 Cal. L. Rev. 1549, 1562 (2001). In response to this decision, the Rules Committee amended Rule 15(c) in 1991 to clarify that defendants can receive notice within the time provided for service of process. *See* Engrav, *supra*. The Amendment states that a proposed defendant must have received notice within the period provided for under Rule 4(m). *See* Fed. R. Civ. P. 15(c)(1)(C). Under Rule 4(m), plaintiffs have 120 days to serve defendants, unless they establish good cause for needing a longer period. *See id.* 4(m).

It is possible to interpret this Amendment in one of two ways. On the one hand, one could read this Amendment to mean that a defendant must receive notice within 120 days after the complaint is filed, even if that period ends before the statute of limitations runs. However, that reading violates the spirit of the 1991 Amendment. The *Schiavone* Court had to decide whether a plaintiff had to provide notice by the end of the statute of limitations period or instead by the end

of the statute of limitations period *plus* the period provided for serving process. 477 U.S. at 26. The Court adopted the narrower reading. *See id.* at 31. In amending Rule 15 in response to this decision, the Advisory Committee attempted to restore the liberal interpretation, noting that the *Schiavone* decision "was inconsistent with the liberal pleading practices secured by Rule 8." Advisory Committee's 1991 Notes on Fed. R. Civ. P. 15, U.S.C. Fed. R. Civ. P. R. 15(c), Part II, pgs. 5-6. Thus, the Committee intended by the 1991 Amendment to allow plaintiffs more time beyond the statute of limitations to serve notice, not to burden plaintiffs with an even shorter deadline than that provided by *Schiavone*. To read the Amendment to mean that a defendant must have received notice within 120 days, even if that expires before the statute of limitations runs, would ignore the history behind the 1991 Amendment to Rule 15(c) and defeat the Amendment's purpose.

In contrast, some authorities interpret the 1991 Amendment to mean that where a plaintiff files her complaint more than 120 days before the statute of limitations runs, the defendant must receive notice within the statute of limitations period. *See* Wright et al., *supra*, § 1498.1, at 134 (noting that under the amended Rule 15(c)(1)(C), "notice received *within the limitations period* continues to support relation back of an amendment changing a party") (emphasis added). This reading comports with the purpose of the 1991 Amendment: to make Rule 15(c) more liberal, to provide plaintiffs with time *beyond* the statute of limitations to serve notice on defendants, rather than shorten the period for service. To read the Amendment otherwise would have the perverse effect of leaving those plaintiffs who file their complaints well before the statute of limitations runs without the benefit of a cushion for notice after the prescriptive period has expired, while extending that very cushion to plaintiffs who delay in filing their complaint. Thus, in light of the 1991 Amendment, the Court reads Rule 15(c)(1)(C) to mean that if the 120 days after filing have expired,

but the statute of limitations has not yet run, the plaintiffs have until the end of the limitations period to provide notice. This reading better serves the purpose underlying the 1991 Amendments.

Applying Rule 4(m) under Rule 15(c), Plaintiffs timely served Dr. Shannon with respect to their § 1983 claim, New Mexico Medical Malpractice Act claim, and common law negligence claim such that Rule 15(c)(1)(C)'s notice requirement is satisfied. Dr. Shannon received notice on April 14, 2009. The plaintiffs' injury occurred on May 25, 2006, when Daniel Garcia died. The New Mexico personal injury statute of limitations, which is three years, N.M. Stat. Ann. § 37-1-8 (2010), applies to the § 1983 claim and the common law negligence claim. A similar three year statute of limitations applies to the Medical Malpractice Act claim. *See* N.M. Stat. § 41-5-13 (1978). Thus, for these claims, the statute of limitations ran on or around May 25, 2009. As Dr. Shannon reeived notice on April 14, 2009, Dr. Shannon received notice over a month before the statute of limitations ran for these claims.

However, the statute of limitations for the New Mexico Tort Claims Act is two years. *See* N.M. Stat. § 41-4-15 (1978). Because Daniel died on May 25, 2006, the statute of limitations ran for this claim around May 25, 2008. Since Dr. Shannon did not receive notice of the Tort Claims Act claim within 120 days of May 25, 2008, he did not receive timely notice of this claim under Rule 4(m), for relation-back purposes.[2]

Thus, Dr. Shannon received timely notice under the Federal Rules with respect to the Plaintiffs' § 1983, New Mexico Medical Malpractice Act, and common law negligence claims.

---

[2] Notably, Plaintiffs conceded at oral argument that neither Dr. Shannon nor Dr. McMurray are "public employee[s]" under the Tort Claims Act. Because only public employees are liable under the Tort Claims Act for negligent provision of health care services, *see* N.M. Stat. §§ 41-4-4, 41-4-10 (1978), Plaintiffs cannot sue either Dr. Shannon or Dr. McMurray under this statute. Therefore, even if the Court did find notice, Plaintiff's motion to add claims against Dr. McMurray under the Tort Claims Act would be futile.

Correctional Medical Services should have learned of the suit around April 14, 2009, when Dr. Shannon received service of process. Therefore, the Court imputes notice to Dr. McMurray regarding the § 1983,  New Mexico Medical Malpractice Act, and common law negligence claims through Correctional Medical Services, the entity responsible for indemnifying and defending both Dr. Shannon and Dr. McMurray.

### 4. Mistake

Finally, under Rule 15(c)(1)(C)(ii), the plaintiff must show that the proposed defendant timely knew or should have known that he would have been added absent a mistake about his identity. *See* Wright et al., *supra*, § 1498.3, at 166-67. If the proposed defendant has reason to know that it should have been named a defendant, courts find adequate knowledge. *See id.* at 172-75.

Several years ago, the Tenth Circuit held that  it is not a "mistake" for a plaintiff to replace a "John Doe" defendant with a person because a plaintiff's "lack of knowledge of defendants' names" is never a "mistake." *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004). The *Garrett* court relied on *Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999), *overruled on other grounds*, *Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003), for the proposition that the mistake proviso is only intended to cover "formal defects," such as misnomers, and because replacing a "John Doe" does not fix a formal defect, it falls outside the scope of the term "mistake." The Eleventh Circuit also relied on *Wayne* to conclude that the term "mistake" only covers "formal defects" in *Krupski v. Costa Cruise Lines, N.V.*, 330 Fed. Appx. 892, 895 (2009), *rev'd*, *Krupski v. Costa Crociere S.P.A.*, 130 S. Ct. 2485, 2493 (2010). Here, Plaintiffs propose to replace a "John Roe" with Dr. McMurray. Based on *Garrett*, standing alone, the Garcias' proposed amendment would not constitute a "mistake."

14

However, the Supreme Court recently reversed *Krupski* in *Krupski v. Costa Crociere S.P.A.*, 130 S. Ct. 2485, 2493 (2010). The Court held that "the question under Rule 15(c)(1)(C)(ii) is not whether [or not *the plaintiff*] knew the identity of [the proposed defendant] as the proper defendant, but rather whether [the *proposed defendant*] knew or should have known that it would have been named as a defendant but for an error." (emphasis added). The Court continued, clarifying that "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at 2493-94. Thus, the Court clarified that the test for the "mistake" element is based on what a reasonable person in the defendant's shoes would have perceived, rather than what the plaintiff did or did not know. Therefore, according to *Krupski*, it is irrelevant whether the plaintiff lacked information or instead knew the proper defendant to join but wrote in the wrong name accidentally. What matters is whether the defendant should have concluded from the complaint and his knowledge of the dispute that the plaintiffs' failure to name him most likely resulted from error, rather than a deliberate strategy.

The *Krupski* Court further clarified that "mistake" does not narrowly only apply to misnomers, but rather broadly applies to any "error, misconception, or misunderstanding; an erroneous belief . . .[ ,]" *id.* at 2494 (quoting Black's Law Dictionary 1092 (9th ed. 2009)), and "[any] wrong action or statement proceeding from faulty judgment, *inadequate knowledge*, or inattention." *Id.* (quoting Webster's Third New International Dictionary 1446 (2002)) (emphasis added). Thus, the Supreme Court's rationale indicates that "inadequate knowledge" about a party's identity constitutes a "mistake" under Rule 15(c)(1)(C)(ii). The Tenth Circuit in *Garrett* relied on the Eleventh Circuit's narrow, pre-*Krupski* interpretation of "mistake" in deciding that lack of

15

knowledge of a party is not a mistake. Therefore, this Court concludes that after *Krupski*, "inadequate knowledge" about a party's identity constitutes a "mistake" under Rule 15(c)(1)(C)(ii). *See United States v. Holyfield*, 481 F.3d 1260, 1262 (10th Cir. 2007) ("Unless and until the Supreme Court determines otherwise, we will continue to follow applicable precedent."); *De Payan v. Wend-Rockies, Inc.*, No. 07-cv-02520-LTB-MEH, 2008 U.S. Dist. LEXIS 42631, at *5-*6 (D. Colo. May 21, 2008) (noting that district courts are "bound to apply Tenth Circuit precedent unless the precedent has been overruled by the Tenth Circuit sitting en banc or superseded by a contrary Supreme Court decision").

Especially following *Krupski*, courts should apply a reasonableness test to determine whether the proposed defendant "should have known" that the plaintiff intended to sue it. *See United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 885 (D.D. Cir. 2010); Kent Sinclair, Sinclair on Federal Civil Practice § 4:7.3 (5th ed. 2008). Courts only refuse relation back where they find no reason why the proposed defendant should have understood that the plaintiff's failure to sue it must have been a mistake, rather than deliberate strategy. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 209 (3d Cir. 2006); *see also* Wright et al., *supra*, § 1498.3, at 172.

Here, Dr. McMurray reasonably should have known that he was a proper party to the lawsuit and that there was no strategic reason for failing to name him, which Plaintiffs made explicit by adding the "John Roes." The original complaint alleges that from May 17 to May 22, 2006, Daniel Garcia requested medical treatment, but did not receive adequate care, and consequently died. (Defs.' Notice of Removal, Ex. A, at 4, 6-7). As Dr. Shannon explains in his motion for summary judgment, Dr. McMurray was the primary physician taking care of Daniel Garcia. (Def. William Shannon, M.D.'s Mem. Br. In Supp. Of his Mot. For Summ. J. 6-7, 10-12). Dr. Shannon, the only

doctor named in the complaint, further explains that he did not provide any care to Daniel related to his heart condition until after he had died. (*Id.* 8). There is no strategic reason that this Court can ascertain why a plaintiff would fail to name the physician primarily responsible for treating Daniel in a suit alleging that Daniel did not receive proper medical treatment.

The facts of *Whittaker v. United Airlines, Inc.*, by comparison, expose the lack of apparent tactical decisions at play here. In *Whittaker*, No. 94-1262, 1995 U.S. App. LEXIS 11824, at *6-*7 (10th Cir. May 18, 1995), the Tenth Circuit found that the plaintiffs, who could not compel arbitration if they joined the union as defendants, had made an overt tactical decision to seek to compel arbitration and, only if that plan failed, to join the union and amend their complaint. The plaintiffs exposed this plan through their request to amend their complaint to add the union only if their motion to compel arbitration failed. *See id.* Unlike in *Whittaker*, there is no apparent gamesmanship involved in the Garcias' failure to add Dr. McMurray.

Absent gamesmanship, Dr. McMurray had every reason to conclude that his absence from the complaint was the result of an error. Dr. McMurray served as Daniel's primary care provider right before Daniel died. Therefore, Dr. McMurray had intimate familiarity with the facts surrounding Daniel's death and thus with the facts of the dispute. Consequently, Dr. McMurray should have known that a properly pleaded complaint alleging medical negligence and deliberate indifference to Daniel's medical needs would have named him, absent a mistake about his identity or role.

The notice and knowledge requirements of Rule 15(c) serve to ensure that courts may fairly exercise jurisdiction over the proposed defendant even though the statute of limitations has run. *See* Wright et al., *supra*, § 1498, at 128. "When [the proposed defendant] has been given fair notice of

a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 471 (4th Cir. 2007) (en banc) (emphasis removed). Based on both Dr. McMurray's key role in caring for Daniel before his death and the number of parties timely added to the dispute who work closely with Dr. McMurray, the Court finds that all elements of Rule 15(c) have been satisfied and that Dr. McMurray will face no prejudice as a newly added defendant. Therefore, the Court finds that the amendment relates back to the timely filing of the original complaint.

## II.   Exercising Discretion Under Rule 15(a) or Rule 16(b)

### A.   Choosing the Proper Standard: Rule 15(a) or Rule 16(b)

The Garcias move for leave to amend after the pleading deadline, which the Court set in its scheduling order, already passed. The parties agree that the Court should apply first Rule 16(b), which covers scheduling orders.  *See* (Pls.'s Reply Br. 1); (Defs County's, City's, Chacon's and Cook's Resp. 5). Defendants argue that after applying Rule 16(b), the Court should apply Rule 15(a), the general rule governing pleading amendments, to determine whether the Court should grant leave to amend. (Defs County's, City's, Chacon's and Cook's Resp. 5). The Tenth Circuit has not yet decided which rule applies in this circumstance. *See Bylin v. Billings*, 568 F.3d 1224, 1231 n.9 (10th Cir. 2009) ("This circuit . . . has not ruled on [whether Rule 16's "good cause" standard governs a motion to amend after a scheduling order has been filed] in the context of an amendment to an existing pleading"); *see also Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) ("We do not decide whether a party seeking to amend its pleading after the scheduling order deadline must show 'good cause' for the amendment under Rule 16(b) in addition to the Rule 15(a) requirements.").

Further, as the Tenth Circuit noted in *Minter*, Rule 16(b)'s "good cause" standard and Rule 15(a)'s "undue delay" factor are roughly similar. 451 F.3d at 1205 n.4. In light of the parties' agreement to apply Rule 16(b) as well as the rough similarity of the standards, the Court assumes, without deciding, that Plaintiffs must first satisfy Rule 16(b)'s "good cause" standard and then also satisfy Rule 15(a)'s requirements. Since the Court finds that Plaintiffs have satisfied both standards, it need not decide which standard governs.

### B.     Whether "Good Cause" Exists Under Rule 16(b)

Rule 16(b)(4) provides that to modify a scheduling order, the moving party must show "good cause." Fed. R. Civ. P. 16(b)(4). Rule 16(b)'s "good cause" standard turns on the diligence of the party seeking leave to amend. *See Minter*, 451 F.3d at 1205 n.4; 3 James W. Moore, Moore's Federal Practice, §16.13[1][a], at 16-52 (3rd ed. 1997). A party can show good cause where the party could not have met the scheduling deadlines despite her diligent efforts. *See Pumpco Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001); *see also* Moore's Federal Practice, *supra*, §16.13[1][a], at 16-52. Rule 16 contemplates flexibility such that the "judge should actively consider making adjustments and moving in new directions in response to new informational and situational developments . . . ." Moore's Federal Practice, *supra*, §16.03[2], at 16-24.

Where the moving party first learns, through discovery or disclosures, the information crucial to an amendment only after the relevant deadline has passed, the party has shown "good cause" to amend. *See Pumpco Inc.*, 204 F.R.D. 668-69. For example, in *Pumpco Inc.*, the court found "good cause" to allow the plaintiff to add claims against a defendant where the plaintiff first learned after the pleading deadline, through discovery, that the defendant had made false statements in connection with the plaintiff's purchase of the goods in issue. *See id.*; *Southern v. United States*, 503 F. Supp.

19

2d 829, 832-33 (W.D. Tex. 2007) (finding "good cause" where plaintiff's counsel alleged that he first learned the information necessary for the amendment months after the scheduling deadline had passed); *Safeway, Inc. v. Sugarloaf P'ship, LLC.*, 423 F. Supp. 2d 531, 539 (D. Md. 2006) (same).

Here, just as in *Pumpco*, *Southern*, and *Safeway*, Plaintiffs allege that they did not learn of the relative roles of Dr. Shannon and Dr. McMurray until April 7, 2010, months after the pleading deadline had passed. Further, Defendants offer no facts to counter the conclusion that Plaintiffs did not learn about Dr. Shannon's major role until after the November 2009 pleadings deadline. Defendants note that Plaintiffs' expert received lab reports by January 2010 with Dr. McMurray's name listed; however, that is still more than a month after the pleading deadline.

In the alternative, the Court notes that when the acts of the opposing party substantially create the delayed need to amend, that showing also establishes "good cause" for the delay. *See Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604-06 (10th Cir. 1997) (finding that where defendants successfully moved to exclude the plaintiffs' expert whom the defendants had initially recommended, the plaintiffs had shown good cause to amend the scheduling order to allow for a new expert); *see also Noyes v. Kelly Servs.*, 488 F.3d 1163, 1173-74 (9th Cir. 2007) (where the opposing party's witness failed to appear for a deposition, the court found "good cause" to extend the discovery deadline). Here, Defendant Shannon failed to identify Dr. McMurray in his pretrial disclosures. However, Dr. Shannon then referred repeatedly to Dr. McMurray in his motion for summary judgment, explaining that Dr. McMurray had provided primary treatment to Daniel Garcia in the weeks before his unexpected death (Def.'s Mot. Summ. J. 6-7, 13-14).

Rule 26(a)(1)(A)(i) provides that "a party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each

individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). A party can violate this rule by failing to previously identify witnesses it may use to support a motion for summary judgment or other pretrial motion. *See, e.g.*, *United States v. Quality Built Constr., Inc.*, 309 F. Supp. 2d 767, 772 (E.D.N.C. 2003); *Chalal v. Northwest Med. Ctr., Inc.*, 147 F. Supp. 2d 1160, 1179 (N.D. Ala. 2000), *aff'd* 250 F.3d 749 (11th Cir. 2001). The "obvious purpose" of the Rule 26(a)(1)(A) disclosure requirement is to identify for the opposing party persons with knowledge about the case so that the opposing side may, *inter alia*, include them in a proposed amended complaint. *See Biltrite Corp. v. World Rd. Markings, Inc.*, 202 F.R.D. 359, 362 (D. Mass. 2001).

Dr. Shannon violated this Rule 26 obligation. Dr. Shannon alleged in his motion for summary judgment that the only two doctors working at the jail were himself and Dr. McMurray and that Dr. McMurray, rather than Dr. Shannon, provided the primary treatment to Daniel Garcia before his death. (Def.  William Shannon, M.D.'s Mem. Br. In Supp. Of his Mot. For Summ. J. 6-7, 10-12). Therefore, the Court presumes that Dr. Shannon knew that he would ultimately raise this fact in his own defense at the outset. Further, in March of 2010, Plaintiffs issued a renewed request for initial disclosures, to which Dr. Shannon did not respond. Even if Dr. Shannon did not know that he would rely on Dr. McMurray at the outset, the Court finds it fair to presume that by March 2010, a few months before Dr. Shannon filed his motion for summary judgment, Dr. Shannon knew that he might use Dr. McMurray in his own defense. Therefore, Dr. Shannon's failure to identify Dr. McMurray in his pretrial disclosures violated his obligation under Rule 26(a)(1). Since in planning discovery Plaintiffs reasonably relied on Dr. Shannon's disclosures, which erroneously omitted Dr.

McMurray, the Court finds that the Garcias have shown good cause for their delayed request for leave to amend. *See, e.g.*, *Rambus Inc. v. Hynix Semiconductor Inc.*, 628 F. Supp. 2d 1114, 1121 (N.D. Cal. 2008).

"[O]ne of the principal purposes of [Rule 16] has been to reduce the likelihood that the outcome of civil litigation would turn on procedural subtlety or tactical advantage," and instead to "secure[] justice on [the] merits." Moore's Federal Practice, *supra*, §16.03[1][c][ii], at 16-22-16-23. Where, as here, the plaintiff only learned information necessary to amend well after the pleading deadline and the defendant contributed to causing the delayed awareness, it is proper to grant the plaintiff leave to amend. The Court finds that granting leave to amend here will forward "justice on [the] merits," as Rule 16 requires, rather than justice based on a strategically played hand.

### C.    Whether Plaintiff Has Satisfied Rule 15(a)

Under Rule 15(a), courts should "freely give leave when justice so requires." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). In the Tenth Circuit, district courts have "wide discretion to recognize a motion for leave to amend in the interest of a fair, just or early resolution of litigation." *Id.* (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999)). Further, courts may only refuse to grant leave if the defendant shows undue delay, undue prejudice, bad faith, or futility. *See id.* Here, Defendants allege all four factors are at play.

Defendants first argue that the Garcias have unduly delayed. The circuits are split on what a defendant must show to establish "undue" delay. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). The Tenth Circuit focuses primarily on the reasons for the delay. *See id.* at 1206. In *Minter*, the court found no undue delay where the defendant had maintained that it was not responsible for a particular safety condition until three weeks before trial, when it changed its

position. *See id.* at 1200. Based on this change in the facts, the plaintiff sought leave to amend his complaint to add a claim against the defendant. *See id.* at 1207. The *Minter* court found the plaintiff's delay reasonable especially in light of the defendant's delay in clarifying the facts, and so the Tenth Circuit reversed the trial court's finding of undue delay as an abuse of discretion. *See id.* The *Minter* court distinguished the case at hand from one in which the plaintiff knew all the facts necessary for the amendment before filing the original complaint. *See id.*

Here, just as in *Minter*, Plaintiffs reasonably relied on Defendant Shannon's Rule 26 disclosures, which never mentioned Dr. McMurray. By failing to mention Dr. McMurray, Dr. Shannon suggested that he himself provided Daniel primary medical care before Daniel's death. However, as of April 7, 2010, Dr. Shannon changed his position, stating at his deposition for the first time that Dr. McMurray served as Daniel's primary physician. Based on this change in position, Plaintiffs filed the pending Motion for Leave to File an Amended Complaint on June 24, 2010.

Defendants allege that Plaintiffs knew of Dr. McMurray's identity by January 2010, because Plaintiffs' medical expert possessed lab reports by that time containing Dr. McMurray's name. (Def. Shannon's Resp. In Opp'n to Pls.' Mot. to Am. Compl. 9). In fact, Defendant Shannon argues that Plaintiffs have possessed the records since "early 2009," citing Exhibit C, (*id.* at 7), yet this transcript only establishes that Plaintiffs' expert had received and reviewed the records some time before May 27, 2010, the date of the deposition.

Further, even assuming that Plaintiffs' expert did possess the report by January 2010, Plaintiffs' medical expert is not their lawyer, and Defendants have not provided additional facts that would justify imputing his awareness of Dr. McMurray's existence to Plaintiffs. *Cf. Avila v. Quarterman*, 560 F.3d 299, 308-09 (5th Cir. 2009) (refusing to impute the knowledge of the

23

government's expert to the prosecution in a criminal case); *United States v. Stewart*, 433 F.3d 273, 298-99 (2d Cir. 2006) (refusing to impute the government expert's knowledge to the prosecution where the expert acted as an ordinary expert witness, rather than also as a member of the prosecution's team involved in developing strategy). Further, even if Plaintiffs could be deemed aware of Dr. McMurray's existence, that does not mean that they should have understood his predominant role in caring for Daniel. In fact, Plaintiffs claim that they did not understand his role until Dr. Shannon's deposition in April 2010. Plaintiffs' counsel, a nurse, represented at oral argument that neither she nor Plaintiffs' expert understood from the laboratory reports that Dr. McMurray was the primary care physician rather than a pathologist. Finally, the Court has reviewed the report and, coupled with the Rule 26 disclosures that failed to name Dr. McMurray, sees no reason to discredit Plaintiffs' version. Therefore, the evidence of the reports does not sustain a finding of undue delay.

Because Defendants fail to provide evidence that Plaintiffs or their lawyer learned of Dr. McMurray's role earlier than April 2010, the Court treats this as the relevant date. Since Plaintiffs filed their motion for leave to amend within a reasonable amount of time after Defendant Shannon revealed Dr. McMurray's role, just as in *Minter*, the Court finds Plaintiff's delay in filing the present Motion reasonable.

Defendants also argue that granting the motion would unduly prejudice them. (Defs. County City, Chacon, and Cook's Resp. to Pls.' Mot. for Leave to File an Am. Compl. 4). Courts usually find prejudice only when an amendment unfairly prejudices defendants "in terms of preparing their defense to the amendment." *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th

Cir. 1971)). Further, spending time, money, and effort in response to an amendment, alone, does not create unfair prejudice. *See Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009).

Defendants argue that they would face "irreparable prejudice" from adding Dr. McMurray because Plaintiffs have now "obtained the benefit of learning the factual and legal deficiencies of [the Plaintiffs'] claims." (Defs. County City, Chacon, and Cook's Resp. to Pls.' Mot. for Leave to File an Am. Compl. 4). While informing opposing counsel of the flaws in her client's case indeed may be prejudicial to Defendants, as it allows Plaintiffs' counsel the chance to fix those flaws, the flaws were caused in large part by Defendants' lack of candid discovery. Consequently, that prejudice is not undue. This Court will not reward one party for "hiding the ball" from the other party in order to spring perceived deficiencies on opposing counsel at the most strategic moment. Courts are in the business of providing a measure of justice, rather than refereeing a high stakes game of poker.

Defendants are also concerned that granting leave to amend would allow Plaintiffs to "obtain a fresh calendar" for conducting discovery and would create "staggering" additional costs. (*Id.* 4-5). However, spending time, money, and effort in response to an amendment, alone, does not create unfair prejudice. *See Bylin*, 568 F.3d at 1230. Further, the calendar currently does not have a pending trial date, so Plaintiffs' motion does not require postponing any scheduled events. Finally, to alleviate the burden on Defendants, additional discovery may be limited, with shortened time-frames, if requested.

Defendants additionally suggest that Plaintiffs have an improper motive for the amendment. Defendants argue that Plaintiffs have moved to amend around the time of the motions for summary judgment in order to stall termination of the case. (Def. Shannon's Resp. In Opp'n to Pls.' Mot. to Am. Compl. 10); (Defs. County City, Chacon, and Cook's Resp. to Pls.' Mot. for Leave to File an

Am. Compl. 5). However, courts do not readily impute bad-faith motives to litigants unless the facts clearly indicate foul play. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008); *In re: Circuit Breaker Litig.*, 860 F. Supp. 1453, 1455 (C.D. Cal. 1994). As noted above, based on Dr. Shannon's failure to disclose Dr. McMurray in his pretrial disclosures, Plaintiffs had reason to be unaware of Dr. McMurray's key role in Daniel's treatment until April 2010. This Court will refrain from imputing an improper motive to the parties where, as here, an innocuous alternative explanation fully explains Plaintiffs' timing.

Finally, Defendants argue that Plaintiffs' motion is futile. Defendant Shannon argues that the motion is futile because the claims contained in the proposed amended complaint do not relate back under Rule 15(c). (Def. Shannon's Resp. In Opp'n to Pls.' Mot. to Am. Compl. 12-14). However, as the Court explains above, the claims do relate back to the original complaint, and therefore the motion is not futile.

Further, the other Defendants argue that the motion is futile because the record establishes that Daniel Garcia received frequent medical treatment in the weeks before he died, and therefore received adequate medical care. (Defs. County City, Chacon, and Cook's Resp. to Pls.' Mot. for Leave to File an Am. Compl. 6-7). Defendants essentially ask the Court to decide the motion for summary judgment instead of the pending motion for leave to amend. Instead of accepting this invitation, the Court addresses Defendants' arguments on the merits in a separate opinion.

Therefore, finding no adequate reason to deny the motion to amend, the Court finds granting leave to amend proper under Rule 15(a).

**<u>Order</u>**

A Memorandum Opinion having been filed, the Motion for Leave to Amend (Doc. 69) is

GRANTED.


Dated: November 30, 2010

_____
**BRUCE D. BLACK**
**UNITED STATES DISTRICT JUDGE**