IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

NESTORA GARCIA, Individually and as Personal Representative of the Wrongful Death Estate of Daniel Alan Garcia, and ROBERT GARCIA, Individually,

    Plaintiffs,

v.      No. CIV 09-322 BB/WDS

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BERNALILLO, a political subdivision of the State of New Mexico;

THE CITY OF ALBUQUERQUE, a municipality organized under the laws of the State of New Mexico;

CAPTAIN COOK, an Employee and/or Agent of the Bernalillo County Metropolitan Detention Center, in his Individual and Official Capacities;

WILLIAM SHANNON, M.D., and TIMOTHY McMURRAY, M.D., Employees and/or Contractors providing medical services at the Bernalillo County Metropolitan Detention Center, in their Individual and Official capacities,

    Defendants.

## MEMORANDUM OPINION ON SUPPLEMENTING DR. HUROWITZ'S EXPERT OPINION

THIS MATTER is before the Court on Defendant William Shannon, M.D.'s

Amended *Daubert* Motion Regarding Dr. Hurowitz' Opinion [doc. 65]. Having

reviewed all submissions of counsel, the Court finds the Motion lacks merit and should be Denied.

I.     *Facts*

On May 16, 2006, Daniel Garcia, a 33-year-old pretrial detainee awaiting trial in the Bernalillo County Metropolitan Detention Center ("BCMDC"), began suffering from an abnormal build-up of fluid in his feet and ankles.  In the two weeks preceding his death, Daniel complained to the jail's doctors repeatedly of pain, abnormal fluid build-up in his extremities, and red, blotchy skin.  The attending doctor prescribed a diuretic and sent Daniel back to his cell.  Following complaints at the end of his second week in jail, a doctor again sent Daniel back to his cell with more diuretic. The following morning, May 25, 2006, Daniel died in his cell from heart failure.

On May 22, 2008, Daniel's parents filed suit in state court on his behalf alleging negligence and deliberate indifference to Daniel's medical needs.  The Garcias named the Bernalillo County Board of Commissioners the City of Albuquerque, Dr. William Shannon, other unnamed medical staff as "John Roes" and four county officers (as well as John Does that Plaintiffs have since dismissed).  The Court permitted Plaintiffs to add Dr. Timothy McMurray as a defendant following the discovery by Plaintiffs' counsel that it was Dr. McMurray, rather than Dr. Shannon, who treated Daniel Garcia. (*See* doc. 108).  After discovering Dr. Shannon never actually treated Daniel,

Plaintiffs now seek to modify the report of their expert, Dr. Bertram Hurowitz, to allege supervisory negligence against Dr. Shannon as the Medical Director of BCMDC.

II.     *Discussion*

    A.     *Dr. Hurowitz is Qualified to Opine on Medical Treatment*

Counsel for Dr. Shannon asserts, "Dr. Hurowitz, a rheumatologist, is not qualified to render an expert opinion as to the standard of care with regard to practicing medicine in a correctional setting in any area other than rheumatology." (Shannon's Am. *Daubert* Mot. p. 9). They call on this Court to exercise its gatekeeping power under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and preclude Dr. Hurowitz "from rendering an expert opinion in this case as a matter of law." (Shannon's Am. *Daubert* Mot. p. 12). When so challenged, the party advancing the expert has the burden of proof. *Daubert*, 509 U.S. at 592 n. 10.

Under *Daubert*, this Court must determine whether the proffered expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Goebel v. Denver & Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). In performing this gatekeeping function, this Court "is given some latitude to fashion procedures appropriate to the case." *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999). In this case, a review of the résumé, report, and deposition testimony of Dr. Hurowitz is sufficient to fulfill this Court's responsibility regarding his qualification to express the medical opinions herein.

**Dr. Bertram Hurowitz has been a medical doctor since 1958 and is board certified in internal medicine. He has very substantial experience in providing heath care in institutional settings including having previously worked as Clinical Director, Federal Bureau of Prisons, Marianna FCI, Florida, 1995-1996; Regional Director of Health Care, Florida Department of Corrections, Fort Lauderdale, Florida, 1996-1999 (where he was responsible for fourteen prisons); Deputy Director of Health Care, Florida Department of Corrections, Fort Lauderdale, Florida, 1996-1999; Physician, Arizona Department of Corrections, Lewis Prison, Buckeye, Arizona, 2002-2003. As a licensed physician for 40 years and board certified in internal medicine, Dr. Hurowitz is qualified to testify regarding decedent's unexplained edema and the need for an electrocardiogram, especially after the findings of normal kidney and liver function. *Cf. Huss v. Hayden*, 571 F.3d 442, 453 (5th Cir. 2009) (board certified internist qualified to give opinion on cause of cardiomyopathy). Although not presently before this Court, based on his institutional experience Dr. Hurowitz may also be qualified to express expert opinion on the basic standard of care for similarly situated penal institutions. *Watson v. United States*, 485 F.3d 1100, 1105 (10th Cir. 2007); *see also McDowell v. Brown*, 392 F.3d 1283, 1296 (11th Cir. 2004) (neurosurgeon who subsequently treated plaintiff qualified to testify about nursing care in prison). It is to the question of whether such an opinion would presently comply with FEDERAL RULE OF CIVIL PROCEDURE 26 to which this Court now turns.**

**B.     *Supplemental Opinion on Shannon's Supervision***

**RULE 26 of the FEDERAL RULES OF CIVIL PROCEDURE is designed to narrow and clarify the issues in dispute and give all parties knowledge of relevant facts, thereby preventing surprise.  *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978); *Matter of Hawaii Corp.*, 88 F.R.D. 518, 524 (D. Haw. 1980).  For that reason, a court should exclude an expert's testimony where a party has failed to comply with discovery deadlines unless the failure is substantially justified or harmless.  *OFS Fitel, LLC v. Epstein Becker & Green, P.C.,* 549 F.3d 1344, 1353 (11th Cir. 2008).**

**In his original RULE 26 report dated February 16, 2010, Dr. Hurowitz opined:**

**There were clear indications that this man had risk factors for heart disease that were not addressed during his incarceration.  These follow:**

> **Page 45-intake 2/1/2006-his weight was 210 pounds and height 5 feet, eight inches, giving him a body mass index of 32, in the obese range.**
> **Page 46-The use of tobacco was noted.**
> **Page 70-The use of 'crack' (cocaine)**
> **Page 77 to 80-Edema of the ankles was repeated[ly] mentioned.**
> **Page 85-'Heartburn' was recorded.**
> **Page 5-An elevated blood glucose was noted.**

**Certainly obesity, tobacco use as well as cocaine have all been noted to be risk factors for heart disease.  In addition, the complaint of 'heartburn' was not investigated with at least some questions as to the nature of the discomfort, location, inciting events, and duration of pain.**

**As elevated blood glucose was not investigated and along these lines in spite of the risk factors for heart disease noted above no investigation of his blood cholesterol or other blood lipids was made.**

> **The edema of the ankles also was not investigated. Clearly that could be a sign of a malfunction heart but no studies such as an electrocardiogram, chest x–ray, or echocardiogram were requested.**
>
> **In addition to the above, I noted that the man was on several psychotropic medications but I could find no orders signed by a health professional to account for these. Relative to his psychotropic medication, 'Geodon' has been reported to affect the conducting system of the heart which could have affected his heart function. Also, there was a paucity of progress notes commenting on the condition of the patient.**
>
> **In my opinion, the above care relative to the death showed a lack of appreciation for the risk of heart disease, also the lack of orders and progress notes all falls below the level of care required in a correctional facility.**

After discovering Dr. Shannon provided no direct treatment to Plaintiffs' decedent, Dr. Hurowitz shifted focus and had little to say about Dr. Shannon. Dr. Hurowitz testified as follows with regard to Dr. Shannon in his deposition:

> Q. Do you have any opinions specifically, Doctor, about anything that Dr. Shannon himself did that fell below the standard of care?
>
> A. Not personally, no.
>
> Q. Or that contributed to his death?
>
> A. Well, he is the medical director.
>
> Q. Correct.
>
> A. In a sense, he is responsible for the entire case. Is that correct?
>
> Q. I am asking your opinion, Doctor.
>
> A. As medical director, when I was medical director I was responsible for any physicians and midlevels. I don't know

> what your policies and procedures are, though, in New Mexico.
>
> Q. You are not saying, are you Doctor, that anything Dr. Shannon did fell below the standard of care?
>
> A. I have no evidence of that.

(*See* Dep. of Dr. Hurowitz, Ex. "B," p. 44, 1.14-p. 45, 1.6).

This case has been pending for two years; initial discovery closed eleven months ago, and trial was originally scheduled October 4, 2010. Counsel for Defendant Shannon obviously conducted discovery with the knowledge that he provided decedent no direct treatment.[1] As evidenced by the above testimony, however, Dr. Hurowitz was aware Dr. Shannon had some kind of supervisory role but never investigated or expressed expert opinions in this area. Given the addition of Dr. McMurray, allowing Dr. Hurowitz to amend his expert report will not interfere with any current trial discovery or trial settings. It will, however, require Dr. Shannon to expend additional funds for discovery regarding any expert opinions and the foundation therefor, regarding Dr. Shannon's supervisory role at BCMDC. In such a situation, the trial court may condition further discovery on the payment of costs. *Comcoa, Inc. v. NEC Tel., Inc.*, 931 F.2d 655, 667 (10th Cir. 1991); *Chalmers v. Petty*, 136 F.R.D. 399 (M.D.N.C. 1991). If Plaintiffs wish to have Dr. Hurowitz testify as to Dr. Shannon's supervisory medical duties at the jail, they must: (1) supplement his report; (2) make

---

[1] Plaintiffs' discovery of this fact was one of the reasons the Court permitted Plaintiffs' late amendment to the complaint.

him available for a supplemental deposition; and (3) cover all costs of such deposition, including transcription.

*[signature: Bruce D. Black]*

**BRUCE D. BLACK**
**Chief Judge**