IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NESTORA GARCIA, *et al.*,

      Plaintiffs,

                                Case No. 09-cv-322 BB/WDS

    v.

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, *et al.*,

      Defendants.

**MEMORANDUM OPINION**

On June 8 and 10, 2010, Defendants filed Motions for Summary Judgment (Docs. 56 & 63). The claims against Defendants were brought by Mrs. and Mr. Garcia, the parents of a pretrial detainee who died of heart failure while awaiting trial in jail. The Garcias have sued the City of Albuquerque, Bernalillo County, as well as officers and doctors that work at the Bernalillo County Metropolitan Detention Center ("the Detention Center") for both deliberate indifference to their son's medical needs and negligence.[1] The Court must determine whether, under Rule 56 of the Federal Rules of Civil Procedure, the Court should grant summary judgment on Plaintiffs' claims.

For the reasons explained below, the Court concludes that Plaintiffs have presented enough evidence of deliberate indifference and negligence against Dr. Shannon such that, viewed in the light most favorable to them, a jury could grant them relief. However, Plaintiffs have not presented enough evidence of deliberate indifference against Officer Cook. Therefore, the Court finds summary judgment proper for Officer Cook on Plaintiffs' deliberate indifference claim. Consequently, the

---

[1]Plaintiffs also originally made failure to train claims that they now wish to abandon. (Doc. 69). In granting Plaintiffs' motion to amend, the Court disposed of these claims.

Court also grants summary judgment for the City and County on Plaintiffs' Tort Claims Act claim of vicarious liability for Officer Cook's alleged violation of federal constitutional rights. Further, as Plaintiffs have failed to explain what rights they have under the New Mexico Constitution, the Court finds summary judgment for the City and County proper on Plaintiffs' state constitutional claim under the Tort Claims Act. Therefore, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

**Factual and Procedural Background**

On May 25, 2006, Mr. Daniel Garcia, a 33-year-old pretrial detainee awaiting trial in the Metropolitan Detention Center, died from heart failure. In the months, and particularly the final two weeks, preceding his untimely death, Daniel complained to the jail's doctors and nurses repeatedly of pain, abnormal fluid buildup in his extremities, and red, blotchy skin. On April 26, 2006, Daniel went to sick call, complaining of prolonged heartburn over several months. A Licensed Practical Nurse (LPN) attended to Daniel, prescribing him Maalox. The LPN did not check Daniel's pulse, count his heart rate, or take his blood pressure. Plaintiffs also claim that, in the weeks before he died, Daniel reported to Officer Cook that he needed medical care urgently but that Officer Cook never acted on his pleas for proper medical attention. (Doc. 71, Ex. 1, at 1.) Defendants, on the other hand, deny that Officer Cook ever made any contact with Daniel.  (Doc. 56, 9-10, 12-13.)

Weeks after the April 26th visit, on May 17, 2006, one of the jail's doctors, Dr. McMurray, saw Daniel when he complained of swelling in his legs. Dr. McMurray ordered lab studies and a chest x-ray, and prescribed Daniel a diuretic. The following day, on May 18, 2006, Daniel went to the state courthouse for a hearing and according to his mother and his attorney, Daniel looked shockingly ill.  (Doc. 78, Ex. 13, at 1); (Doc. 77, Ex. 12, at 1.) After this appearance, Daniel saw Dr.

McMurray again on May 22, 2006, still complaining of swelling. Dr. McMurray ordered an antibiotic and adjusted his diuretic. Daniel again returned on May 24, 2006, now unable to urinate, and Dr. McMurray again did nothing more than adjust his diuretic. That same day, on May 24, 2006, Daniel called his mother, in severe pain, begging her to help him get to a hospital. On May 25, 2006, the next morning, Daniel died in his cell from heart failure.

On May 23, 2008, Daniel's parents filed suit in state court on his behalf alleging, in pertinent part, negligence and deliberate indifference to Daniel's medical needs. The Garcias named, *inter alia*, the Bernalillo County Board of Commissioners, the City of Albuquerque, Dr. William Shannon, and Officer Charisse Cook. On June 8 and June 10, 2010, Defendants moved for summary judgment. The Motions for Summary Judgment now before this Court pertain alone to the above named Defendants; the remaining defendants have either been dismissed or have not yet filed a motion for summary judgment. (Doc. 70.)

**Discussion**

Summary judgment is only proper if the pleadings, affidavits, and other exhibits show that there is no genuine issue regarding any material fact and further that on the undisputed facts, the law entitles the movants to judgment in their favor. *See* Fed. R. Civ. P. 56(c)(2). Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court may not pass on the credibility of witnesses or weigh evidence, but rather must assess objectively whether factual issues exist for a jury to decide. *See id.* at 249. A dispute of facts is "genuine" if a reasonable jury could return a verdict for the nonmoving party based on the nonmovant's version of the facts. *See id.* at 248. In assessing whether genuine issues of material fact exist, the court must view the facts and draw reasonable inferences in the light

most favorable to the non-movant. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1379 (10th Cir. 1994).

**I.      The § 1983 Claims**

Pretrial detainees enjoy the right to be free from cruel and unusual punishment under the Fourteenth Amendment's Due Process Clause. *See Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). With respect to access to medical care, a detainee can show a Fourteenth Amendment violation where a jail guard or medical provider has acted with "deliberate indifference" to the detainee's medical needs. *See id.* In contrast, a showing of mere negligence does not establish a Fourteenth Amendment violation. *See Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). To show that an officer acted with deliberate indifference to the detainee's medical needs, the plaintiff must meet a two-prong test. The plaintiff must show that his medical needs were objectively "sufficiently serious" and that the officer subjectively acted with a "culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The relevant medical need can be either the symptoms that the prisoner manifested at the time of the alleged violation or the underlying medical condition that created the symptoms. *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). In the Tenth Circuit, both heart damage and severe chest pain are sufficiently serious medical needs. *Id.*

Here, Daniel had experienced heart burn or chest pain for several months, severe swelling of his limbs, and ultimately heart failure. The parties dispute whether the heart burn was a symptom of Daniel's heart condition. Plaintiff's expert, Dr. Hurowitz, opined that one of the risk factors for heart disease that Daniel manifested was the "heart burn."[2] (Doc. 63, Ex. B at 2); (Doc. 61, Ex. A, at 1.) Defendant Dr. Shannon denies that the heart burn was chest pain, as does his expert. (Doc. 77, Ex. 10, at 1); (Doc. 63, Ex. B at 2.) Reading the facts in the light most favorable to Plaintiffs, the Court treats the heart burn as heart-related chest pain for this summary judgment motion.

Further, the parties also dispute whether Daniel appeared obviously sick. While Defendants argue that Daniel did not appear obviously ill, (Doc. 56, at 12), Plaintiffs note that Daniel appeared shockingly ill to his mother and attorney the week before he died, based on his general appearance and swollen limbs. (Doc. 78, Ex. 13, at 1); (Doc. 77, Ex. 12, at 1.) Viewing the facts in the light most favorable to Plaintiffs, the Court finds the swelling a condition that obviously required medical care.

Here, all three conditions constitute serious medical needs. As the Tenth Circuit recognized in *Mata*, both chest pain and heart damage constitute serious medical needs. 427 F.3d at 753. Further, in this case, Plaintiffs have provided evidence that physicians would diagnose persistent heart burn as a condition requiring treatment. They have also provided evidence that Daniel's illness, based on his swollen limbs and general appearance, was obvious to at least two lay people: his mother and his attorney. Thus, they have provided evidence that both the heart burn and the swelling were sufficiently serious medical conditions. Finally, it is undisputed that Daniel died from heart disease, and as the Tenth Circuit has already recognized heart damage as a serious medical need, *see*

---

[2] The Court finds Dr. Hurowitz qualified to render an expert opinion as to whether Daniel manifested symptoms of heart disease before his untimely death.

*id.*, at this stage then, Plaintiffs have provided sufficient evidence that the heart disease was a serious condition. Therefore, following the Tenth Circuit in *Mata*, the Court finds that the prolonged chest pain, prolonged swelling in the limbs, and heart failure all constitute serious medical needs.

Yet, the Tenth Circuit also explained that to hold a defendant liable under the Eighth Amendment for a delay in providing medical care, the plaintiff must show that the delay caused the plaintiff injury. *See id.* at 751. A plaintiff can prove this causation prong by showing that the delay caused the plaintiff to suffer considerable pain. *See id.* Here the doctors delayed in effectively treating Daniel's swelling and his heart condition. In this case, Plaintiffs have provided evidence that Daniel repeatedly returned to the chronic care clinic because the swelling caused him pain and made him unable to urinate. Further, Daniel suffered death from the heart disease. Both of these showings suffices to establish that the delay in treatment caused Daniel considerable pain. Consequently, the Court finds that Plaintiffs have shown that the medical needs in issue were sufficiently serious.

Turning to the second prong, a prison official has a sufficiently culpable state of mind if the official "knows of and disregards" a substantial risk to the prisoner's health, in other words, if the official acts recklessly. *See Mata v. Saiz*, 427 F.3d 745, 751-52 (10th Cir. 2005); *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). A plaintiff may use circumstantial evidence to establish the requisite *mens rea*. *See Mata*, 427 F.3d at 752. If a risk is obvious, such that a reasonable person would understand it, jurors may infer that the defendant did in fact understand it. *See Farmer*, 511 U.S. at 842 (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, p. 335 (1986)). Thus, when faced with a serious medical risk, a doctor recklessly disregards that risk where the doctor delays in

providing the inmate proper medical treatment or fails to treat a medical condition of which the doctor should have known, and thereby causes the inmate harm. *See Mata*, 427 F.3d at 755.

The Court applies the subjective prong first to Officer Cook and then to Dr. Shannon.

**A.     Officer Cook's State of Mind**

Officer Cook argues that she never even made contact with Daniel, let alone received and ignored his requests to access medical help. (Doc. 56, at 10, 12-13.) Plaintiffs dispute this claim, based on Ms. Garcia's affidavit stating that Daniel told her while in jail that he was having trouble obtaining the medical treatment he needed, so he reported the problem to Officer Cook several times, asking for her to help him access medical care. (Doc. 71, Ex. 1, at 1.) If the Court can consider the affidavit, viewing the facts in the light most favorable to Plaintiffs, it would find a genuine issue as to a material fact. Therefore, this dispute raises the issue of whether the Court may consider the affidavit in deciding this motion.

*1.     Genuineness of the Affidavit*

Defendants ask the Court to ignore the affidavit, first claiming that it is a "sham" because it allegedly contradicts Ms. Garcia's prior testimony. In the Tenth Circuit, courts do not dismiss affidavits merely because they contradict a prior sworn assertion. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). Rather, the court should first assess whether the statements do in fact contradict each other, and if they do, then consider whether any of the following circumstances apply. *See id.* The following circumstances suggest that an affidavit is genuine even if it contradicts a prior statement: (a) if the affiant did not have access to the evidence at the time of the prior statement or (b) if the prior testimony reflects confusion which the affidavit tries to explain. *See id.*

At Ms. Garcia's deposition, she mentioned that Daniel had filed grievances with medical because he wasn't getting the proper psychological medications, a problem unrelated to treatment of his heart-condition. (Doc. 82, Ex. 9, at 1.) Ms. Garcia also stated that Daniel had given these grievances to a "Mr. Cook." (*Id.*). In the recently executed affidavit, Ms. Garcia states that Daniel told her while in jail that he was having trouble seeing a doctor, and so he reported the problem to Officer Cook several times, asking for her to help him access medical care. (Doc. 71, Ex. 1, at 1.)

While at first blush it appears that the latter affidavit may be somewhat inconsistent with the former testimony in terms of the substance of Daniel's report, it does not when read in the light most favorable to Plaintiffs. In Ms. Garcia's deposition, she spoke of a conversation in which Daniel had reported to her that he wasn't receiving the proper psychotropic medications and to solve this problem, he had filed grievances and shared them with Officer Cook. In Ms. Garcia's later affidavit, reading the affidavit in the light most favorable to Plaintiffs, she appears to speak of another conversation, in which Daniel shared that he had complained to Officer Cook that the jail was "ignoring his requests to see a doctor." (Doc. 71, Ex. 1, at 1.) Thus, there is no contradiction regarding the substance of Daniel's actions.

Rather, it appears that the primary confusion that Ms. Garcia aimed to correct in her affidavit involved Officer Cook's gender. Ms. Garcia explicitly explains in the affidavit that she had mistakenly thought that Officer Cook was a male, but now understands that Officer Cook is a woman. (Doc. 71, Ex. 1, at 1.) Thus, the affidavit appears to be an attempt to bear testimony to an additional material fact as well as to correct Ms. Garcia's earlier mistake of referring to Officer Cook

8

as a male. Because the contradiction does not go to the substance of what Daniel said and because the affidavit seeks to clarify earlier confusion, the Court will not disregard the affidavit.

### 2. *Hearsay: Reliability of the Affidavit*

Defendants also argue that even if the Court can consider the affidavit as genuine, it is inadmissible hearsay and so Plaintiffs cannot rely upon it. (Doc. 82, at 4.) For a court to consider evidence at summary judgment, the form of the evidence presented need not be admissible, but the content of the evidence must be admissible. *See Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). Hearsay evidence consists of a statement made by an out-of-court declarant that is offered to prove the truth of what the declarant asserted. *See* Fed. R. Evid. 801(c).

Here, Ms. Garcia's affidavit contains hearsay. She reports what Daniel allegedly stated to her, which asserted that he had been unsuccessful in seeing a doctor and that he reported this problem to Officer Cook. Therefore, Daniel's statement to Ms. Garcia, as an out-of-court assertion, constitutes hearsay. Hearsay is generally inadmissible. *See* Fed. R. Evid. 802. However, courts may admit hearsay statements if they fall within one of the recognized exceptions under the Federal Rules of Evidence. *See id.* 802. Plaintiffs entirely failed to respond to Defendant Cook's claim that the affidavit is hearsay. From the Court's review of the statement, it can identify no exception to the hearsay rule under Rule 803 or 804 that would make admissible Daniel's out-of-court statement to his mother. Further, because neither party raised Rule 807, the Court will refrain from considering its admissibility under this exception. Moreover, the self serving nature of the affidavit suggests that it would not be a stellar candidate for Rule 807. Thus, Ms. Garcia's affidavit is inadmissible hearsay.

3.      *Officer Cook's State of Mind*

The parties dispute whether Daniel reported his need for medical care to Officer Cook. Defendants argue that Officer Cook made no contact with Daniel. (Doc. 56, at 10, 12-13.) Plaintiffs dispute this claim, but have no admissible evidence to support their version of the facts. Therefore, Plaintiffs have failed to raise a genuine issue of material fact about whether Officer Cook made contact with Daniel, and about whether Daniel asked for her help in obtaining medical care. Absent evidence that Daniel made contact with Officer Cook, Plaintiffs cannot establish that Officer Cook knew of Daniel's need for help accessing medical care and recklessly ignored his requests. Thus, the Court finds summary judgment proper on Plaintiffs' deliberate indifference claim against Officer Cook.

**B.      Dr. Shannon's State of Mind**

To reiterate,  a prison official has a sufficiently culpable state of mind if the official "knows of and disregards" a substantial risk to the prisoner's health.  *See Mata v. Saiz*, 427 F.3d 745, 751-52 (10th Cir. 2005).  Further, for a medical director to be liable for the actions of another care provider, there must be a link between the provider's unconstitutional actions and the supervisor's exercise of control or failure to supervise. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). In other words, the evidence must support a finding that the supervisor knew that his actions created a substantial risk of bodily harm to the inmate plaintiff. *See id.* In *Green*, the Tenth Circuit found an affirmative link where the plaintiff offered evidence that after the plaintiff was brutally beaten in prison, other prisoners had informed the warden that the plaintiff needed help. *See id.* at 1302-03. Because the evidence showed that the warden chose to do nothing, the Tenth Circuit held that a jury could find the warden deliberately indifferent to the prisoner's medical needs. *See id.* at 1303.

10

Here, the parties dispute whether Dr. Shannon is responsible for the actions of all care providers who serve at sick call. Both parties agree that Dr. Shannon was the doctor responsible for sick call patients. (Doc. 63, at 4.) Yet, Defendant Shannon argues that he is not responsible for decisions made by nurses that respond to patients at sick call, citing language in the Detention Center's policy manual stating that "[c]linical decisions are the sole responsibility of the responsible health care professionals." (Doc. 84, at 8.) However, it is unclear who constitute the "responsible health care professionals." The next line states that "[t]he Medical Director, designated by CMS, has final responsibility for making or approving all medical decisions regarding care provided to inmates of the institution." (Doc. 76, Ex. 3, at 2.) Based on this provision, and the fact that Dr. Shannon served as the Medical Director at the time Daniel was staying in the Detention Center, Plaintiffs argue that Dr. Shannon is responsible for decisions made by nurses treating patients at sick call.

Reading the policy in the light most favorable to Plaintiffs, the Court finds that the "responsible health care professionals" referred to in the policy may include the Medical Director as a factual matter, because he has "final responsibility" for supervising all medical decisions in the institution. Therefore, at this point there is an issue of fact as to whether Dr. Shannon responsible for personally reviewing decisions made by nurses serving at sick call. Consequently, a jury could find that Dr. Shannon had a duty to review the sick call patient files, and from this review knew that Daniel presented to sick call on April 26th with prolonged chest pain, a serious medical condition.

The question remains whether the LPN's actions failed to address Daniel's medical needs to such an extent that Dr. Shannon, in reviewing her work, showed deliberate indifference by failing to order further tests. In *Mata*, an LPN, while treating a prisoner complaining of chest pain, refused to assess or diagnose the prisoner's medical condition at all by, for instance, taking her blood

11

pressure, listening to her heart with a stethoscope, or performing a cardiac work-up. 427 F.3d at 758. Based on the LPN's inaction, the court found that the plaintiff had raised an issue of material fact as to whether the LPN had acted with reckless indifference to the substantial risk that the patient was suffering from a serious cardiac condition. *See id.* The *Mata* court distinguished the LPN's actions in issue from the facts of *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). In *Sealock*, the nurse had checked the patient's lungs and skin, and after considering all of his symptoms, concluded that he had the flu. 218 F.3d at 1208. The *Mata* court noted that unlike the nurse defendant in *Sealock*, the LPN in *Mata* did not merely misdiagnose the patient, but rather refused to assess the medical condition at all "by, for instance, taking her blood pressure, listening to her heart with a stethoscope, and performing a cardiac work-up." *Mata*, 427 F.3d at 758.

Here, on April 26, 2006, Daniel went to sick call, complaining of prolonged heartburn over several months. An LPN attended to Daniel, prescribing him Maalox. Just as in *Mata*, there is no evidence that the LPN who treated Daniel when he came in complaining of prolonged heart burn did anything to investigate what kind of problem Daniel had, including whether it was heart-related. There is no evidence that her conclusion was based on an assessment of Daniel's various symptoms, or was reached after giving Daniel any tests. Rather, she simply accepted his description as an accurate self-diagnosis and gave him Maalox.

Dr. Shannon might argue that the LPN did diagnose Daniel's condition: by giving Daniel Maalox, she implicitly treated his pain as mere heartburn. However, there is no evidence that this conclusion was based on the LPN's medical assessment of Daniel. Plaintiffs' expert has provided evidence that chest pain, disguised as heart burn, is a symptom of heart disease. *See* (Doc. 63, Ex. B at 2); (Doc. 61, Ex. A, at 1.) Defendant Shannon provided no evidence that the LPN did anything

to assess whether Daniel's pain was heart burn or rather chest pain. Therefore, viewing the facts in the light most favorable to Plaintiffs, the LPN does not appear to have made a misdiagnosis, but rather appears to have taken Daniel's characterization of his own medical condition as true without making any assessment of her own.

Just as in *Mata*, the patient came to the nurse with chest pain, and just as in *Mata*, the LPN refused to assess or diagnose the prisoner's medical condition at all by, for instance, taking his blood pressure, listening to his heart with a stethoscope, or performing a cardiac work-up. *See Mata*, 427 F.3d at 758. Because, viewed in the light most favorable to Plaintiffs, Dr. Shannon was responsible for the LPN's work as Medical Director and the doctor responsible for sick call patients, a jury could find that Dr. Shannon's failure to order assessment of Daniel's heart after this April 26th visit amounted to deliberate indifference.

Finally, Defendant Shannon argues that heart burn is not a symptom of heart disease and so it did not provide him reason to know of Daniel's heart condition. (Doc. 77, Ex. 10, at 1.) However, Plaintiffs' expert testified to the opposite, that heart burn can be a symptom of heart disease. Viewing the facts in the light most favorable to Plaintiffs, a jury could also find that Dr. Shannon knew that heart burn was a potential symptom of heart disease, a serious condition. Therefore, based on Dr. Shannon's failure to order assessment of Daniel's heart after his sick call visit, a jury could find that Dr. Shannon showed deliberate indifference to Daniel's medical needs.

## II.     Qualified Immunity and Entity Liability

### A.     Qualified Immunity

The City of Albuquerque, Bernalillo County, and Officer Cook argue that qualified immunity shields them from liability. Qualified immunity shields officers from liability where officers have violated a constitutional right that was not clearly established at the time of the alleged violation. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Because the Court found above that Plaintiffs have not provided enough evidence to prove that Officer Cook committed any constitutional violation under the Fourteenth Amendment, the Court need not consider Defendants' qualified immunity argument.

### B.     Tort Claims Act Entity Liability

Plaintiffs argue that the City of Albuquerque and Bernalillo County are vicariously liable for Officer Cook's actions under the New Mexico Tort Claims Act. They cite § 41-4-12, which waives immunity of law enforcement officers for, *inter alia*, deprivations of federal rights caused while acting within the scope of employment. *See* N.M. Stat. § 41-4-12 (1978).  Defendants respond that under § 1983, courts may not hold local governments vicariously liable for a federal constitutional injury inflicted solely by the government entity's employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). Because the Court has found above that Plaintiffs have failed to provide enough evidence to show that Officer Cook violated any of Daniel's federal constitutional rights, the Court finds that Plaintiffs' have not provided enough evidence to support their Tort Claims Act claim against the City and County for vicarious liability. Therefore, the Court grants summary

14

judgment to the City of Albuquerque and Bernalillo County on Plaintiffs claims of vicarious liability for Officer Cook's alleged violation of federal constitutional rights.

Plaintiffs also argue that the City of Albuquerque and Bernalillo County are vicariously liable for Officer Cook's actions in violation of the New Mexico Constitution under the New Mexico Tort Claims Act. While that may be true, Plaintiffs never articulate in their brief how Officer Cook violated New Mexico's Constitution. Therefore, the Court grants summary judgment to the City of Albuquerque and Bernalillo County on Plaintiffs claims of respondeat superior liability for Officer Cook's alleged violation of the New Mexico Constitution.

**The Negligence Claims against Dr. Shannon**

Plaintiffs also have alleged that Dr. Shannon acted negligently under the New Mexico Tort Claims Act, the New Mexico Medical Malpractice Act, and the common law. Turning first to the Tort Claims Act, at oral argument Plaintiffs conceded that Dr. Shannon is not a "public employee" under the Tort Claims Act. Because only public employees are liable under the Tort Claims Act for negligent provision of health care services, *see* N.M. Stat. §§ 41-4-4, 41-4-10 (1978), Plaintiffs cannot sue Dr. Shannon under this statute.

Turning next to New Mexico common law negligence and the New Mexico Medical Malpractice Act, Defendant Shannon argues that he cannot be held liable for the LPN's actions in treating Daniel's heartburn because, he argues, he had no control over the LPN's actions. (Doc. 63, at 14.) Plaintiffs provide evidence to the contrary, from the Detention Center's policy manual stating that "[t]he Medical Director, designated by CMS, has final responsibility for making or approving all medical decisions regarding care provided to inmates of the institution."(Doc. 76, Ex. 3, at 2.) Based on this provision, and the fact that Dr. Shannon served as the Medical Director at the time

15

Daniel was staying in the Detention Center, Plaintiffs argue that Dr. Shannon is responsible for reviewing decisions made by nurses treating patients at sick call.

As discussed above regarding Plaintiffs' deliberate indifference claim, read in the light most favorable to Plaintiffs, the Court finds that the "responsible health care professionals" referred to in the policy include the Medical Director, because he has "final responsibility" for supervising all medical decisions in the institution. Thus, Plaintiffs have created a dispute of material fact as to Dr. Shannon's level of control. Further, Plaintiffs' expert has testified that the failure of the LPN to inquire further into the heart burn fell below the standard of care. (Doc. 61, Ex. A, at 1-2.) As such, a jury could conclude that Dr. Shannon had a duty to order further testing after reviewing the file on Daniel's heart burn, and that he breached his duty of care by failing to do so. Because Plaintiffs have raised a dispute of material fact as to Dr. Shannon's negligence, the Court finds summary judgment improper on Plaintiffs' common law negligence and Medical Malpractice Act claim.

Finally, Defendant Shannon raises for the first time in his reply brief the argument that Plaintiffs must produce expert medical testimony as to both negligence and causation. (Doc. 84, at 14.) However, in this Circuit, absent exceptional circumstances, courts do not consider arguments raised for the first time in a reply brief. *See Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007); *Taylor v. United Mgmt.*, 51 F. Supp. 2d 1212, 1215 n.2 (D.N.M. 1999). Firstly, it is unfair to the other party, who has no opportunity to respond. *See Hill*, 478 F.3d at 1250-51. Secondly, it is unfair to the court, "which, without the benefit of a response from [the nonmovant] to [a movant's] late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence . . . on the adversarial process for sharpening the issues for decision." *See id.* (quoting

*Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278-79 (10th Cir. 1994)). Consequently, the Court

refrains from considering this argument with respect to this particular motion.


Dated: March 24, 2011


                                        _Bruce D Black_ _____

                                        **BRUCE D. BLACK**
                                        **UNITED STATES DISTRICT JUDGE**